UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**CHAROLETTE R. KUNS**                                              **PLAINTIFF**

**VS.**                                      **CIVIL ACTION NO.: 1:19-cv-00234-HSO-JCG**

**WASTE PRO OF MISSISSIPPI, INC.**                                  **DEFENDANT**

RESPONSE IN OPPOSITION
TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

**COMES NOW**, Plaintiff Charolette R. Kuns and provides the following response in opposition to the Motion for Summary Judgment [Doc. No. 21] filed by Defendant Waste Pro of Mississippi, Inc. (hereinafter referred to as "Waste Pro" or "Defendant"), as follows:

1. In October 2008, Charolette R. Kuns (hereinafter referred to as "Charolette Kuns", "Ms. Kuns", or "Plaintiff") began employment with Delta Sanitation in Gautier, Jackson County, Mississippi as a residential waste collection truck driver.  During the first year of her employment, Charolette Kuns learned to operate all of the waste collection trucks on the residential side, including but not limited to: 1) rear loading loading trucks that collect household refuse, 2) side loading trucks that collect recycled items, 3) grapple trucks that collect larger refuse items, and 4) cart trucks that distribute and collect residential refuse carts.  See MSJ Response Exhibit "1" (Affidavit of Charolette Kuns at ¶ 2).

2. Waste Pro of Mississippi, Inc. (hereinafter referred to as "Waste Pro" or "Defendant") is a Mississippi Business Corporation.  See MSJ Response Exhibit "2" (Waste Pro 2018 Annual Report).  On or about January 11, 2010, Waste Pro acquired Delta Sanitation of Gautier.  See MSJ Response Exhibit "3" (Jan. 11, 2010, Waste Pro Press Release).

3. In 2010, after Waste Pro took over Delta Sanitation, Charolette Kuns continued to work driving waste collection trucks from Waste Pro's Gautier Depot. Waste Pro trained Charolette Kuns to work as a dispatcher for waste collection vehicles and as an administrative assistant. Charolette Kuns worked for Waste Pro in these positions. See MSJ Response Exhibit "1" (Affidavit of Charolette Kuns at ¶ 3).

4. Waste Pro serviced its waste collection contract with Jackson County, Mississippi from the Waste Pro Gautier Depot. Also, from its Gautier Depot, Waste Pro serviced its waste collection contracts with the City of Ocean Springs, the City of Gautier, and the City of Pascagoula. All of these cities are situated in Jackson County, Mississippi. See MSJ Response Exhibit "1" (Affidavit of Charolette Kuns at ¶ 4).

5. In 2013, Waste Pro promoted Charolette Kuns to Regional Safety Inspector. In this position, Charolette Kuns helped oversee safety issues for 14 divisions of Waste Pro located in Alabama, Louisiana, and Mississippi. See MSJ Response Exhibit "1" (Affidavit of Charolette Kuns at ¶ 5).

6. In November 2014, Waste Pro transferred Charolette Kuns to work as a residential driver in its Gulfport, Mississippi Depot. Waste Pro never assigned a specific position to Ms. Kuns other than "residential driver." See MSJ Response Exhibit "1" (Affidavit of Charolette Kuns at ¶ 6).

7. From its Gulfport Depot, Waste Pro serviced its contracts in Harrison County, Mississippi including its contract with the City of Gulfport. Waste Pro operations from the Gulfport Depot and the Gautier Depot were essentially separate operations servicing different geographical areas. See MSJ Response Exhibit "1" (Affidavit of Charolette Kuns at ¶ 7 and 8).

8. By 2018, Charolette Kuns operated a grapple truck from Waste Pro's Gulfport operations. In April 2018, Charolette Kuns became ill with colitis. Despite her condition, Charolette Kuns initially continued to perform her duties of her employment with Waste Pro. As the illness progressed, Charolette Kuns continued to work as she became severely dehydrated and was unable to properly eat or drink. She suffered from fatigue and vertigo. She experienced significant drops in her blood pressure. See MSJ Response Exhibit "1" (Affidavit of Charolette Kuns at ¶ 9-10).

9. On or about June 8, 2018, Charolette Kuns left her work at Waste Pro due to her fatigue and vertigo and because her health care provider opined that it would be unsafe for Charolette Kuns to continue to operate Waste Pro's machinery. The health care provider released Ms. Kuns from work until further notice. See MSJ Response Exhibit "1" (Affidavit of Charolette Kuns at ¶ 11-13).

10. On or about June 14, 2018, Charolette Kuns notified Waste Pro of her request for Family Medical Leave Act ("FMLA") leave beginning on June 11, 2018 for her own serious health condition. See MSJ Response Exhibit "1" (Affidavit of Charolette Kuns at ¶ 14).

11. On June 19, 2018, Waste Pro provided to Charolette Kuns the company's FMLA leave request forms. With this letter, Waste Pro provided Charolette Kuns with U.S. Department of Labor Form WH-381, informing Ms. Kuns she was eligible for FMLA and her responsibility to provide sufficient certification to support her request for FMLA leave. See MSJ Response Exhibit "1" (Affidavit of Charolette Kuns at ¶ 15).

12. On June 26, 2018, Whitney Moore, NP filled out Section III, U.S. Department of Labor Form WH-380-E, noting that Charolette Kuns was unable to drive or operate equipment due to weakness and dizziness and that her period of incapacity was estimated to last from

June 11, 2018 to September 11, 2018. See MSJ Response Exhibit "1" (Affidavit of Charolette Kuns at ¶ 16).

13. In July 2018, Ms. Kuns continued medical treatment for her illness. Her health care provider noted that she was still experiencing dizzy spells and was not ready to return to work operating waste collection trucks. See MSJ Response Exhibit "1" (Affidavit of Charolette Kuns at ¶ 16).

14. During this time period, Waste Pro's site manager at the Gulfport Depot was Anthony Jemmott, commonly known as "Tony Jemmott." During her medical leave, Ms. Kuns had occasion to enter the Waste Pro Gulfport Depot to drop off paperwork related to her medical leave. On this occasion, Tony Jemmott interfered with her rights under the Family and Medical Leave Act ("FMLA") by asking Charolette Kuns, "How long are you going to be out? Indefinitely?" Ms. Kuns responded that she intended to return to work. However, this comment from the Waste Pro supervisor made Charolette Kuns apprehensive about her job security because she had requested medical leave. See MSJ Response Exhibit "1" (Affidavit of Charolette Kuns at ¶ 18).

15. By August 2018, Ms. Kuns felt that her medical condition had improved and felt compelled to return to work to avoid employment termination. On August 7, 2018, Charolette Kuns' health care provider released her to return to work. On or about August 9, 2018, a physician employed by Waste Pro released Charolette Kuns to return to work. See MSJ Response Exhibit "1" (Affidavit of Charolette Kuns at ¶ 19).

16. On Friday, August 10, 2018, Charolette Kuns reported to work but she felt dizzy and was unable to work. Charolette Kuns reported her condition to Waste Pro site manager Tony Jemmott who allowed her to leave the work site. Ms. Kuns continued to fear that Waste

Pro would fire her for taking medical leave and she expressed this concern to Waste Pro H.R. Manager, Kimetra Leggins. In response, Ms. Leggins said, "You are not going to lose your job." See MSJ Response Exhibit "1" (Affidavit of Charolette Kuns at ¶ 20).

17. Later, on August 10, 2018, Charolette Kuns went to her health care provider who released her from work until August 13, 2018. See MSJ Response Exhibit "1" (Affidavit of Charolette Kuns at ¶ 21).

18. Also, on August 10, 2018, Waste Pro issued Form WH-382, finally notifying Ms. Kuns it was designating her medical leave as FMLA leave. In this document, Waste Pro designated the time period from June 11, 2018 to September 2, 2018 against her FMLA leave entitlement. See MSJ Response Exhibit "1" (Affidavit of Charolette Kuns at ¶ 22).

19. Charolette Kuns returned to work on Monday, August 13, 2018. Waste Pro assigned Charolette Kuns to operate a cart truck on August 13, 14, and 15, 2018. On August 15, 2018, less than a week after she returned to work, Waste Pro called Ms. Kuns back to the Gulfport Depot and supervisor Tony Jemmott notified Ms. Kuns that Waste Pro had terminated her employment. See MSJ Response Exhibit "1" (Affidavit of Charolette Kuns at ¶ 23).

20. Charolette Kuns had a very good employment record with Waste Pro with no written or verbal warnings about poor job performance, misconduct, tardiness, or absenteeism. The pretextual reason Waste Pro gave for Ms. Kuns' termination was "position elimination." See MSJ Response Exhibit "1" (Affidavit of Charolette Kuns at ¶ 23 and 26).

21. Ms. Kuns began searching for new employment shortly after Waste Pro fired her. At this time, Ms. Kuns saw Waste Pro advertisements for the following types of residential

drivers: 1) Cart Delivery Driver, 2) Front Load Driver, and 3) Residential Driver. See MSJ Response Exhibit "1" (Affidavit of Charolette Kuns at ¶ 24).

22. Also, shortly after Waste Pro fired Ms. Kuns, Tony Jemmott of Waste Pro called her and asked her if she would consider returning to work for Waste Pro if he could get Waste Pro to rehire her. Ms. Kuns told Tony Jermmott no. Ms. Kuns explained she said no because the Waste Pro had already fired her and she did not want to be rehired just to be fired again for some false reason. See MSJ Response Exhibit "1" (Affidavit of Charolette Kuns at ¶ 25).

23. The FMLA requires covered employers to grant covered employees up to twelve weeks of unpaid leave for certain qualifying reasons, such as the birth of a child or the occurrence of an employee's own serious health condition. To ensure employer compliance, the FMLA mandates that employees who take FMLA leave shall be entitled to restoration to their old positions. Additionally, the FMLA makes it unlawful for any employer to "interfere with, restrain, or deny" the exercise of any right provided under the FMLA. The FMLA also prohibits discriminatory retaliation against employees who exercise their FMLA rights.

24. Waste Pro violated the FMLA by refusing to restore Ms. Kuns to her previous position after she returned from medical leave.

25. Waste Pro violated the FMLA by denying and interfering with Ms. Kuns' exercise of her medical leave.

26. By failing to provide Ms. Kuns with timely designation of notice of FMLA leave, Waste Pro denied and interfered with Ms. Kuns's FMLA rights.

27. Waste Pro denied and interfered with Ms. Kuns's FMLA rights by discouraging Ms. Kuns from using her FMLA protected leave.

28. Waste Pro violated the FMLA by discriminating against Ms. Kuns by terminating her employment in retaliation against Ms. Kuns for taking FMLA protected medical leave.

29. Ms. Kuns makes a *prima facie* showing of retaliation under the FMLA since: 1) she was protected under the FMLA, 2) she suffered an adverse employment decision, and 3) Waste Pro's decision to terminate her employment was made because she took FMLA leave.

30. This very close temporal proximity between Ms. Kuns's exercise of her FMLA rights and Waste Pro's adverse employment action establishes the necessary causal link for a *prima facie* case of discriminatory retaliation.

31. Waste Pro's proffered "explanation" for its termination of its employment of Ms. Kuns is more likely than not a mere pretext since the explanation lacks credibility considering the totality of the circumstances presented in the summary judgment record.

32. email string.  See Response Exhibit "5" (Declaration of John Geboy) and Response Exhibit "6" (Declaration of Kimetra Leggins).

33. A genuine issue of material fact as to whether Waste Pro's explanation for firing Ms. Kuns was pretextual.  This case does not present the rare instance where plaintiff has presented a weak issue of fact as to whether employer's reason was untrue.  Nor is this a case showing abundant and uncontroverted independent evidence that no discrimination has occurred.bb"  Here,

34. Ms. Kuns has presented independent evidence in support of her arguments that together raise a genuine issue of material fact as to whether Waste Pro's "position elimination" explanation was a mere pretext.

35. For these reasons, summary judgment in favor of Waste Pro is not appropriate in this case.

**RESPECTFULLY SUBMITTED**, this 14th day of September 2020.

                                        **CHAROLETTE R. KUNS**

                                        */s/ John Paul Barber*
                                        **JOHN PAUL BARBER,**
                                        **ATTORNEY FOR PLAINTIFF**

PREPARED BY:
J. Paul Barber, MSB # 1983
2598 Pass Rd., Suite A
Biloxi, MS  39531
228-447-3522 (o)
228-220-1588 (f)
paul@jpaulbarberlaw.com

## CERTIFICATE OF SERVICE

     I, John Paul Barber, do hereby certify that I have this date, filed a true and correct copy of the foregoing Response in Opposition, using the ECF system, which provides notice of such filing, to all counsel of record. I have also sent a copy of the foregoing Response in Opposition to Counsel for Defendant**,** via USPS and/or Email to the following:

        M. Kimberly Hodges
        OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
        International Place Tower II
        6410 Poplar Avenue, Suite 300
        Memphis, TN 38119
        Kim.Hodges@ogletree.com

**SO CERTIFIED** this the 14th day of September 2020.

                                        */s/ John Paul Barber*
                                        **JOHN PAUL BARBER, MSB #1983**